**Fill in this information to identify the case:**

Debtor 1  Florence James
Debtor 2
(Spouse, if filing)
United States Bankruptcy Court  Northern District of Illinois
Case number: 19-05769

FILED
U.S. Bankruptcy Court
Northern District of Illinois
4/18/2019
Jeffrey P. Allsteadt, Clerk


EXHIBIT A

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Enclave Condominium Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Enclave Condominium Association
Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone  630-690-6446
Contact email  ben@keaycostello.com

Where should payments to the creditor be sent? (if different)
Name

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                         Proof of Claim                         page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 2502.65   Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Association lien<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 178000.00<br>**Amount of the claim that is secured:** $ 2502.65<br>**Amount of the claim that is unsecured:** $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) ____%<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410   Proof of Claim   page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. Check all that apply: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   4/18/2019
                   MM / DD / YYYY

/s/ Benjamin J. Rooney
Signature

Print the name of the person who is completing and signing this claim:

Name       Benjamin J. Rooney
           First name   Middle name   Last name

Title

Company    Keay & Costello, P.C.
           Identify the corporate servicer as the company if the authorized agent is a servicer

Address    128 S. County Farm Road
           Number   Street
           Wheaton, IL 60187
           City   State   ZIP Code

Contact phone   630-690-6446        Email   ben@keaycostello.com

Official Form 410                   Proof of Claim                          page 3

| Date | Document No | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 10/01/2018 | RAS-2018M10-1677372-126 | Assessment for October 2018 | $212.06 | | $2,255.31 |
| 10/01/2018 | FCC-2018M9-1723176 | Finance Charges for September 2018 | $13.35 | | $2,268.66 |
| 10/01/2018 | 12203802 | Payment Received - Thank You. | | $213.00 | $2,055.66 |
| 10/25/2018 | 1703392 | Payment Received - Thank You. | | $192.31 | $1,863.35 |
| 10/31/2018 | LFC-2018M10-1783997 | Late Payment Charges for October 2018 | $10.00 | | $1,873.35 |
| 11/01/2018 | RAS-2018M11-1712056-101 | Assessment for November 2018 | $212.06 | | $2,085.41 |
| 11/01/2018 | FCC-2018M10-1785305 | Finance Charges for October 2018 | $13.64 | | $2,099.05 |
| 11/30/2018 | LFC-2018M11-1821305 | Late Payment Charges for November 2018 | $10.00 | | $2,109.05 |
| 11/30/2018 | 1705439 | Payment Received - Thank You. | | $192.31 | $1,916.74 |
| 12/01/2018 | RAS-2018M12-1776687-118 | Assessment for December 2018 | $212.06 | | $2,128.80 |
| 12/01/2018 | FCC-2018M11-1815838 | Finance Charges for November 2018 | $13.94 | | $2,142.74 |
| 12/28/2018 | 1707551 | Payment Received - Thank You. | | $192.31 | $1,950.43 |
| 12/31/2018 | LFC-2018M12-1850548 | Late Payment Charges for December 2018 | $10.00 | | $1,960.43 |
| 01/01/2019 | RAS-2019M1-1826091-140 | Assessment for January 2019 | $218.42 | | $2,178.85 |
| 01/01/2019 | FCC-2018M12-1851116 | Finance Charges for December 2018 | $14.24 | | $2,193.09 |
| 01/24/2019 | 1709655 | Payment Received - Thank You. | | $192.31 | $2,000.78 |
| 01/31/2019 | LFC-2019M1-1899294 | Late Payment Charges for January 2019 | $10.00 | | $2,010.78 |
| 02/01/2019 | RAS-2019M2-1845840-140 | Assessment for February 2019 | $218.42 | | $2,229.20 |
| 02/01/2019 | FCC-2019M1-1898240 | Finance Charges for January 2019 | $14.63 | | $2,243.83 |
| 02/21/2019 | 1711906 | Payment Received - Thank You. | | $192.31 | $2,051.52 |
| 02/28/2019 | LFC-2019M2-2001571 | Late Payment Charges for February 2019 | $10.00 | | $2,061.52 |
| 03/01/2019 | RAS-2019M3-1881457-134 | Assessment for March 2019 | $218.42 | | $2,279.94 |
| 03/01/2019 | FCC-2019M2-1991283 | Finance Charges for February 2019 | $15.02 | | $2,294.96 |
| 03/20/2019 | 1713943 | Payment Received - Thank You. | | $192.31 | $2,102.65 |
| 3-31-19 | | BK Legal fee - Letter & POC | 400.00 | | $2,502.65 |

| Date | Document No | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 11/01/2017 | FCC-2017M10-1315824 | Finance Charges for October 2017 | $7.50 | | $721.40 |
| 11/30/2017 | LFC-2017M11-1345930 | Late Payment Charges for November 2017 | $10.00 | | $731.40 |
| 12/01/2017 | RAS-2017M12-1306919-127 | Assessment for December 2017 | $203.90 | | $935.30 |
| 12/01/2017 | FCC-2017M11-1347514 | Finance Charges for November 2017 | $10.56 | | $945.86 |
| 12/31/2017 | LFC-2017M12-1376365 | Late Payment Charges for December 2017 | $10.00 | | $955.86 |
| 01/01/2018 | RAS-2018M1-1341402-130 | Assessment for January 2018 | $212.06 | | $1,167.92 |
| 01/01/2018 | FCC-2017M12-1378013 | Finance Charges for December 2017 | $6.12 | | $1,174.04 |
| 01/03/2018 | 10901957 | Payment Received - Thank You. | | $500.00 | $674.04 |
| 01/05/2018 | REVERSED-10901957 | Payment Reversal (re: 10901957). Invalid ACH Routing Number | $500.00 | | $1,174.04 |
| 01/31/2018 | LFC-2018M1-1411173 | Late Payment Charges for January 2018 | $10.00 | | $1,184.04 |
| 02/01/2018 | RAS-2018M2-1371461-129 | Assessment for February 2018 | $212.06 | | $1,396.10 |
| 02/01/2018 | FCC-2018M1-1420290 | Finance Charges for January 2018 | $16.80 | | $1,412.90 |
| 02/04/2018 | LEGL-1406873-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 81604 | $231.39 | | $1,644.29 |
| 02/28/2018 | LFC-2018M2-1449962 | Late Payment Charges for February 2018 | $10.00 | | $1,654.29 |
| 03/01/2018 | RAS-2018M3-1404651-111 | Assessment for March 2018 | $212.06 | | $1,866.35 |
| 03/01/2018 | FCC-2018M2-1456517 | Finance Charges for February 2018 | $19.98 | | $1,886.33 |
| 03/13/2018 | 24800137290 | Payment Received - Thank You. | | $830.00 | $1,056.33 |
| 03/31/2018 | LFC-2018M3-1488001 | Late Payment Charges for March 2018 | $10.00 | | $1,066.33 |
| 04/01/2018 | RAS-2018M4-1444528-142 | Assessment for April 2018 | $212.06 | | $1,278.39 |
| 04/01/2018 | FCC-2018M3-1493274 | Finance Charges for March 2018 | $10.71 | | $1,289.10 |
| 04/19/2018 | 885002 | Payment Received - Thank You. | | $267.00 | $1,022.10 |
| 04/30/2018 | LFC-2018M4-1527546 | Late Payment Charges for April 2018 | $10.00 | | $1,032.10 |
| 05/01/2018 | RAS-2018M5-1483299-128 | Assessment for May 2018 | $212.06 | | $1,244.16 |
| 05/01/2018 | FCC-2018M4-1530470 | Finance Charges for April 2018 | $9.89 | | $1,254.05 |
| 05/31/2018 | LFC-2018M5-1565104 | Late Payment Charges for May 2018 | $10.00 | | $1,264.05 |
| 06/01/2018 | RAS-2018M6-1520104-133 | Assessment for June 2018 | $212.06 | | $1,476.11 |
| 06/01/2018 | FCC-2018M5-1565998 | Finance Charges for May 2018 | $13.07 | | $1,489.18 |
| 07/01/2018 | RAS-2018M7-1559072-138 | Assessment for July 2018 | $212.06 | | $1,701.24 |
| 07/02/2018 | 11762766 | Payment Received - Thank You. | | $212.06 | $1,489.18 |
| 07/03/2018 | LEGL-1596725-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 88253 BK (Pre Petition) | $175.00 | | $1,664.18 |
| 07/31/2018 | LFC-2018M7-1643031 | Late Payment Charges for July 2018 | $10.00 | | $1,674.18 |
| 08/01/2018 | RAS-2018M8-1595722-140 | Assessment for August 2018 | $212.06 | | $1,886.24 |
| 08/01/2018 | FCC-2018M7-1644106 | Finance Charges for July 2018 | $13.07 | | $1,899.31 |
| 08/01/2018 | LEGL-1633667-1 | Legal Charges in Connection with the Collection of Delinquent Assessments-Inv 89701 BK - Pre Petition | $125.00 | | $2,024.31 |
| 08/03/2018 | 11997168 | Payment Received - Thank You. | | $212.06 | $1,812.25 |
| 08/28/2018 | OTHER-08282018-1674580-139 | Deck Staining Charge | $175.00 | | $1,987.25 |
| 08/31/2018 | LFC-2018M8-1683533 | Late Payment Charges for August 2018 | $10.00 | | $1,997.25 |
| 09/01/2018 | RAS-2018M9-1632925-137 | Assessment for September 2018 | $212.06 | | $2,209.31 |
| 09/01/2018 | FCC-2018M8-1684314 | Finance Charges for August 2018 | $16.25 | | $2,225.56 |
| 09/26/2018 | 1701263 | Payment Received - Thank You. | | $192.31 | $2,033.25 |
| 09/30/2018 | LFC-2018M9-1717642 | Late Payment Charges for September 2018 | $10.00 | | $2,043.25 |



| Date | Document No | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 04/01/2016 | FCC-2016M3-542113 | Finance Charges for March 2016 | $2.94 | | $395.06 |
| 04/25/2016 | 8174309 | Payment Received - Thank You. | | $196.06 | $199.00 |
| 04/30/2016 | LFC-2016M4-606157 | Late Payment Charges for April 2016 | $10.00 | | $209.00 |
| 05/01/2016 | RAS-2016M5-534940-139 | Assessment for May 2016 | $196.06 | | $405.06 |
| 05/02/2016 | 8231558 | Payment Received - Thank You. | | $245.00 | $160.06 |
| 05/06/2016 | REVERSED-8231558 | Payment Reversal (re: 8231558). Invalid Account Number | $245.00 | | $405.06 |
| 05/31/2016 | LFC-2016M5-640372 | Late Payment Charges for May 2016 | $10.00 | | $415.06 |
| 06/01/2016 | RAS-2016M6-580928-136 | Assessment for June 2016 | $196.06 | | $611.12 |
| 06/01/2016 | FCC-2016M5-643878 | Finance Charges for May 2016 | $5.88 | | $617.00 |
| 07/01/2016 | RAS-2016M7-634845-140 | Assessment for July 2016 | $196.06 | | $813.06 |
| 07/05/2016 | 8481111 | Payment Received - Thank You. | | $401.73 | $411.33 |
| 08/01/2016 | RAS-2016M8-667316-136 | Assessment for August 2016 | $196.06 | | $607.39 |
| 08/04/2016 | 995065 | Payment Received - Thank You. | | $401.00 | $206.39 |
| 08/18/2016 | 8635560 | Payment Received - Thank You. | | $206.39 | $0.00 |
| 08/30/2016 | 8653930 | Payment Received - Thank You. | | $196.06 | ($196.06) |
| 09/01/2016 | RAS-2016M9-717744-134 | Assessment for September 2016 | $196.06 | | $0.00 |
| 10/01/2016 | RAS-2016M10-759950-134 | Assessment for October 2016 | $196.06 | | $196.06 |
| 10/03/2016 | 8833526 | Payment Received - Thank You. | | $196.06 | $0.00 |
| 10/31/2016 | 8903969 | Payment Received - Thank You. | | $196.06 | ($196.06) |
| 11/01/2016 | RAS-2016M11-809704-136 | Assessment for November 2016 | $196.06 | | $0.00 |
| 11/29/2016 | 9011922 | Payment Received - Thank You. | | $196.06 | ($196.06) |
| 12/01/2016 | RAS-2016M12-853772-90 | Assessment for December 2016 | $196.06 | | $0.00 |
| 01/01/2017 | RAS-2017M1-892601-133 | Assessment for January 2017 | $203.90 | | $203.90 |
| 02/01/2017 | RAS-2017M2-922084-140 | Assessment for February 2017 | $203.90 | | $407.80 |
| 02/07/2017 | 9379995 | Payment Received - Thank You. | | $203.90 | $203.90 |
| 03/01/2017 | RAS-2017M3-950985-140 | Assessment for March 2017 | $203.90 | | $407.80 |
| 03/06/2017 | 9501690 | Payment Received - Thank You. | | $203.90 | $203.90 |
| 04/01/2017 | RAS-2017M4-983849-129 | Assessment for April 2017 | $203.90 | | $407.80 |
| 04/05/2017 | 9647873 | Payment Received - Thank You. | | $245.00 | $162.80 |
| 05/01/2017 | RAS-2017M5-1037212-132 | Assessment for May 2017 | $203.90 | | $366.70 |
| 05/15/2017 | 9809459 | Payment Received - Thank You. | | $250.00 | $116.70 |
| 06/01/2017 | RAS-2017M6-1077570-131 | Assessment for June 2017 | $203.90 | | $320.60 |
| 07/01/2017 | RAS-2017M7-1116559-129 | Assessment for July 2017 | $203.90 | | $524.50 |
| 07/10/2017 | 10071006 | Payment Received - Thank You. | | $300.00 | $224.50 |
| 08/01/2017 | RAS-2017M8-1150482-103 | Assessment for August 2017 | $203.90 | | $428.40 |
| 09/01/2017 | RAS-2017M9-1187490-134 | Assessment for September 2017 | $203.90 | | $632.30 |
| 10/01/2017 | RAS-2017M10-1233770-133 | Assessment for October 2017 | $203.90 | | $836.20 |
| 10/06/2017 | 10472428 | Payment Received - Thank You. | | $359.36 | $476.84 |
| 10/12/2017 | REVERSED-10472428 | Payment Reversal (re: 10472428). Invalid Account Number | $359.36 | | $836.20 |
| 10/13/2017 | 10498163 | Payment Received - Thank You. | | $336.20 | $500.00 |
| 10/31/2017 | LFC-2017M10-1314130 | Late Payment Charges for October 2017 | $10.00 | | $510.00 |
| 11/01/2017 | RAS-2017M11-1266557-118 | Assessment for November 2017 | $203.90 | | $713.90 |

| Date | Document No | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 06/11/2015 | 995035 | Payment Received - Thank You. | | $190.00 | $1,224.95 |
| 06/12/2015 | 995027 | Payment Received - Thank You. | | $190.00 | $1,034.95 |
| 06/30/2015 | LFC-2015M6-154460 | Late Payment Charges for June 2015 | $10.00 | | $1,044.95 |
| 07/01/2015 | RAS-2015M7-119472-139 | Assessment for July 2015 | $188.52 | | $1,233.47 |
| 07/01/2015 | FCC-2015M6-152973 | Finance Charges for June 2015 | $15.15 | | $1,248.62 |
| 07/21/2015 | 995039 | Payment Received - Thank You. | | $190.00 | $1,058.62 |
| 07/31/2015 | LFC-2015M7-185467 | Late Payment Charges for July 2015 | $10.00 | | $1,068.62 |
| 08/01/2015 | RAS-2015M8-140661-139 | Assessment for August 2015 | $188.52 | | $1,257.14 |
| 08/01/2015 | FCC-2015M7-180175 | Finance Charges for July 2015 | $15.50 | | $1,272.64 |
| 08/19/2015 | 20629467507 | Payment Received - Thank You. | | $188.00 | $1,084.64 |
| 08/31/2015 | LFC-2015M8-230876 | Late Payment Charges for August 2015 | $10.00 | | $1,094.64 |
| 09/01/2015 | RAS-2015M9-177537-139 | Assessment for September 2015 | $188.52 | | $1,283.16 |
| 09/01/2015 | FCC-2015M8-227825 | Finance Charges for August 2015 | $15.89 | | $1,299.05 |
| 09/15/2015 | ARCM-2015-233294-175 | Adjust Assessment Rate January 2015- March 2015 | ($26.94) | | $1,272.11 |
| 09/17/2015 | 22630863791 | Payment Received - Thank You. | | $190.00 | $1,082.11 |
| 09/30/2015 | LFC-2015M9-263704 | Late Payment Charges for September 2015 | $10.00 | | $1,092.11 |
| 10/01/2015 | RAS-2015M10-219015-139 | Assessment for October 2015 | $188.52 | | $1,280.63 |
| 10/01/2015 | FCC-2015M9-266069 | Finance Charges for September 2015 | $15.47 | | $1,296.10 |
| 10/08/2015 | 23095612440 | Payment Received - Thank You. | | $367.00 | $929.10 |
| 10/31/2015 | LFC-2015M10-302503 | Late Payment Charges for October 2015 | $10.00 | | $939.10 |
| 11/01/2015 | RAS-2015M11-258496-139 | Assessment for November 2015 | $188.52 | | $1,127.62 |
| 11/01/2015 | FCC-2015M10-304907 | Finance Charges for October 2015 | $12.79 | | $1,140.41 |
| 11/11/2015 | 17278759269 | Payment Received - Thank You. | | $367.00 | $773.41 |
| 11/30/2015 | LFC-2015M11-354062 | Late Payment Charges for November 2015 | $10.00 | | $783.41 |
| 12/01/2015 | RAS-2015M12-295094-141 | Assessment for December 2015 | $188.52 | | $971.93 |
| 12/01/2015 | FCC-2015M11-351012 | Finance Charges for November 2015 | $10.11 | | $982.04 |
| 12/14/2015 | 20592572745 | Payment Received - Thank You. | | $367.00 | $615.04 |
| 12/31/2015 | LFC-2015M12-382111 | Late Payment Charges for December 2015 | $10.00 | | $625.04 |
| 12/31/2015 | LFC-2015M12-382111 | Late Fee Waiver (re: LFC-2015M12-382111). waive per assoc atty | ($10.00) | | $615.04 |
| 01/01/2016 | RAS-2016M1-364189-140 | Assessment for January 2016 | $188.52 | | $803.56 |
| 01/01/2016 | RAS-2016M1-466182-174 | January 2016 Assessment Adjustment | $7.54 | | $811.10 |
| 01/01/2016 | FCC-2015M12-384605 | Finance Charges for December 2015 | $7.44 | | $818.54 |
| 01/31/2016 | LFC-2016M1-475393 | Late Payment Charges for January 2016 | $10.00 | | $828.54 |
| 01/31/2016 | LFC-2016M1-475393 | Late Fee Waiver (re: LFC-2016M1-475393). waive per assoc atty | ($10.00) | | $818.54 |
| 02/01/2016 | RAS-2016M2-377869-141 | Assessment for February 2016 | $196.06 | | $1,014.60 |
| 02/01/2016 | FCC-2016M1-465016 | Finance Charges for January 2016 | $10.26 | | $1,024.86 |
| 02/01/2016 | FCC-2016M1-465016 | Finance Charge Waiver (re: FCC-2016M1-465016). waive per assoc atty | ($10.26) | | $1,014.60 |
| 02/19/2016 | 995055 | Payment Received - Thank You. | | $191.00 | $823.60 |
| 02/19/2016 | 995057 | Payment Received - Thank You. | | $821.00 | $2.60 |
| 02/24/2016 | ARCM-493954-1 | adjust balance, atty office | ($2.60) | | $0.00 |
| 03/01/2016 | RAS-2016M3-448368-141 | Assessment for March 2016 | $196.06 | | $196.06 |
| 04/01/2016 | RAS-2016M4-496237-137 | Assessment for April 2016 | $196.06 | | $392.12 |

Enclave Condominium Association, a not for profit corporation
PO Box 803555
Dallas, TX 75380-3555

# STATEMENT

| Statement Date | 04/17/2019 |
|---|---|
| Account Number | R0280235U0058422 |
| Check Digit | 4 |
| Community ID | ENCLAVE |
| Property Address | 120 Enclave Cir #C Bolingbrook, IL 60440 |

**Robert & Florence James**
120 ENCLAVE CIR #C
BOLINGBROOK, IL 60440

Access your account at **www.ciranet.com/residentportal** or via CiraMobile, available in the Apple App Store for iOS devices. Create a customer service request via email at realservice@ciramail.com or contact us via phone toll-free at 866-473-2573 or 866-4-REALSERVICE

| Date | Document No | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 09/30/2014 | ARDM-744-1 | Incoming Beginning Balance | $1,005.51 | | $1,005.51 |
| 10/01/2014 | RAS-2014M10-445-144 | Assessment for October 2014 | $179.54 | | $1,185.05 |
| 10/15/2014 | 63492593 | Payment Received - Thank You. | | $180.00 | $1,005.05 |
| 10/23/2014 | 5074 | Payment Received - Thank You. | | $195.00 | $810.05 |
| 11/01/2014 | RAS-2014M11-1746-140 | Assessment for November 2014 | $179.54 | | $989.59 |
| 11/05/2014 | 0063492592 | Payment Received - Thank You. | | $100.00 | $889.59 |
| 11/10/2014 | 72003621 | Payment Received - Thank You. | | $180.00 | $709.59 |
| 12/01/2014 | RAS-2014M12-1789-143 | Assessment for December 2014 | $179.54 | | $889.13 |
| 12/02/2014 | 0072003622 | Payment Received - Thank You. | | $100.00 | $789.13 |
| 12/31/2014 | LFC-2014M12-11811 | Late Payment Charges for December 2014 | $10.00 | | $799.13 |
| 01/01/2015 | RAS-2015M1-8562-140 | Assessment for January 2015 | $188.52 | | $987.65 |
| 01/01/2015 | FCC-2014M12-11457 | Finance Charges for December 2014 | $5.39 | | $993.04 |
| 01/31/2015 | LFC-2015M1-15912 | Late Payment Charges for January 2015 | $10.00 | | $1,003.04 |
| 02/01/2015 | RAS-2015M2-11239-139 | Assessment for February 2015 | $188.52 | | $1,191.56 |
| 02/01/2015 | FCC-2015M1-15111 | Finance Charges for January 2015 | $8.21 | | $1,199.77 |
| 02/09/2015 | 995003 | Payment Received - Thank You. | | $188.52 | $1,011.25 |
| 02/09/2015 | 995004 | Payment Received - Thank You. | | $100.00 | $911.25 |
| 02/10/2015 | 995013 | Payment Received - Thank You. | | $200.00 | $711.25 |
| 02/25/2015 | REVERSED-995013 | Payment Reversal (re: 995013) Payment Reversal For 995013. Returned for NSF | $200.00 | | $911.25 |
| 02/28/2015 | LFC-2015M2-19317 | Late Payment Charges for February 2015 | $10.00 | | $921.25 |
| 03/01/2015 | RAS-2015M3-14315-139 | Assessment for March 2015 | $188.52 | | $1,109.77 |
| 03/01/2015 | FCC-2015M2-19968 | Finance Charges for February 2015 | $11.04 | | $1,120.81 |
| 03/02/2015 | NSF-18830-1 | Returned Payment Charge | $25.00 | | $1,145.81 |
| 03/31/2015 | LFC-2015M3-56352 | Late Payment Charges for March 2015 | $10.00 | | $1,155.81 |
| 04/01/2015 | RAS-2015M4-18795-140 | Assessment for April 2015 | $188.52 | | $1,344.33 |
| 04/01/2015 | FCC-2015M3-55332 | Finance Charges for March 2015 | $13.87 | | $1,358.20 |
| 04/21/2015 | 995017 | Payment Received - Thank You. | | $188.52 | $1,169.68 |
| 04/30/2015 | LFC-2015M4-94798 | Late Payment Charges for April 2015 | $10.00 | | $1,179.68 |
| 05/01/2015 | RAS-2015M5-54160-96 | Assessment for May 2015 | $188.52 | | $1,368.20 |
| 05/01/2015 | FCC-2015M4-93621 | Finance Charges for April 2015 | $16.70 | | $1,384.90 |
| 05/31/2015 | LFC-2015M5-123170 | Late Payment Charges for May 2015 | $10.00 | | $1,394.90 |
| 06/01/2015 | RAS-2015M6-82115-128 | Assessment for June 2015 | $188.52 | | $1,583.42 |
| 06/01/2015 | FCC-2015M5-120733 | Finance Charges for May 2015 | $19.53 | | $1,602.95 |
| 06/04/2015 | 995030 | Payment Received - Thank You. | | $188.00 | $1,414.95 |

R2001095552

MARY ANN STUKEL  62P
Will County Recorder
Will County
R 2001095552    Page 1 of 62
PC1 Date 07/25/2001   Time 10:44:39
Recording Fees:    111.00

# ENCLAVE CONDOMINIUM

### DECLARATION OF CONDOMINIUM OWNERSHIP AND OF EASEMENTS, RESTRICTIONS, COVENANTS AND BY-LAWS

00-000206

**PREPARED BY AND UPON RECORDING RETURN TO:**

Jeffrey J. Stahl
Stahl Brashler LLC
20 East Jackson Boulevard, Suite 1600
Chicago, Illinois 60604

**COMMON ADDRESS:**
101-106-108 Enclave Circle
Bolingbrook, Illinois

PIN: 02-11-300-019

1 of 62

**R20O1095552**

of the entrance doors from the new Unit; provided, however, that (i) prior to doing so, the Unit Owner shall deliver to the Board for review and approval plans for such removal, (ii) following such removal the wall of the Common Elements corridor in which such door was located shall be restored to the same condition as the rest of such corridor, including the installation of identical wall coverings, if any, and (iii) such work shall be done at the Unit Owner's sole cost and expense free of any liens or claims for lien in conformity with all applicable laws, statutes, codes and ordinances and to the satisfaction of the Board. So long as Declarant or Developer owns any Units, Declarant or Developer shall have the right to combine and subdivide Units and to designate as a Limited Common Element appurtenant to the resulting Unit or Units, the portion of the Common Elements corridor located between or adjacent to such Units, by recording an amendment to this Declaration and the Plat in accordance with the Act. Declarant and Developer shall not be required to make application to the Board or receive the Board's approval to combine or subdivide Units, to designate Limited Common Elements appurtenant to the resulting Unit or Units or to record amendments to this Declaration and the Plat in accordance with the Act.

### ARTICLE V
### COMMON EXPENSES, MORTGAGES AND REAL ESTATE TAXES

1. <u>Common Expenses</u>. Each Unit Owner shall pay his proportionate share of the common expenses of administration, maintenance, and repair of the Common Elements and of any other expenses incurred in accordance with this Declaration and By-Laws or otherwise lawfully agreed upon. Such proportionate share of the common expenses for each Unit Owner shall be in the same ratio as his percentage of ownership in the Common Elements. Payment thereof shall be in such amounts and at such times and manner as provided in the By-Laws. If any Unit Owner shall fail or refuse to make any such payment of the Common Expenses when due, the amount thereof shall constitute a lien on the interest of such Unit Owner in the Property as provided in the Act.

2. <u>Separate Mortgages</u>. Each Unit Owner shall have the right, subject to the provisions herein, to make a separate mortgage or encumbrance on his respective Unit together with his respective ownership interest in the Common Elements. No Unit Owner shall have the right or authority to make or create or cause to be made or created any mortgage or encumbrance or other lien on or affecting the Property or any part thereof, except only to the extent of his Unit and his respective ownership interest in the Common Elements.

3. <u>Separate Real Estate Taxes</u>. It is understood that real estate taxes are to be separately taxed to each Unit Owner for his Unit and his corresponding percentage of ownership in the Common Elements, as provided in the Act. If for any year such taxes are not separately taxed to each Unit Owner, but are taxed on the Property as a whole, then each Unit owner shall pay his proportionate share thereof in accordance with his respective percentage of ownership interest in the Common Elements.

### ARTICLE VI
### INSURANCE

1. <u>Types</u>. The Board shall acquire, as a Common Expense, and shall have the authority and duty to obtain insurance for the Property as follows:

    (a) Physical damage insurance on the Property (which shall specifically cover, pursuant to industry standards, all private roads and streets within the Parcel not dedicated to a



/7

# R2001095552

there shall be an annual meeting of the voting members each year within 15 days of the anniversary of the first meeting or at such other reasonable time or date (not more than thirty (30) days before or after such date) as may be designated by written notice of the Board delivered to the voting members not less than ten (10) days or more than thirty (30) days prior to the date fixed for said meeting.

    c) Special meetings of the voting members may be called at any time for the purpose of considering matters which, by the terms of this Declaration, require the approval of all or some of the voting members, or for any other reasonable purpose. Said meetings shall be called by written notice, authorized by the president of the Board, a majority of the Board, or by the voting members having 20% of the total votes and delivered not less than ten (10) days or more than thirty (30) days prior to the date fixed for said meeting. The notices shall specify the date, time, and place of the meeting and matters to be considered. Matters to be submitted at special meetings of the voting members shall first be submitted to the Board, at least ten (10) days prior to the special meeting, who shall then submit the matters to the voting members.

3.     <u>Notices of Meetings</u>. Notices of meetings required to be given herein may be delivered either personally or by mail to the person entitled to vote thereat, addressed to each person at the address given by him to the Board for the purpose of service of such notice, or to the Unit of the Unit Owner with respect to which such voting right appertains, if no address has been given to the Board.

4.     <u>Miscellaneous</u>.

    a) No merger or consolidation of the Association; sale, lease, exchange, mortgage, pledge or other disposition of all, or substantially all of the Property and assets of the Association; or the purchase or sale of land or of units on behalf of all Unit owners shall be effected unless there is an affirmative vote of two-thirds (2/3) of the votes of Unit Owners, at a meeting duly called for that purpose.

    b) When thirty percent (30%) or fewer of the Units, by number, possess over fifty percent (50%) in the aggregate of the votes in the Association, any percentage vote of members specified in the condominium instruments, or the Act, shall require instead the specified percentage by number of Units rather than by percentage of interest in the Common Elements allocated to Units that would otherwise be applicable.

## ARTICLE XV
## ASSESSMENTS - MAINTENANCE FUND

1.     <u>Estimated Annual Budget and Assessments</u>.

    a) Each year on or before November 1, the Board shall estimate the total amount necessary to pay the cost of all common expenses which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements. The annual budget shall set forth with particularity all anticipated Common Expenses by category as well as all anticipated assessments and other income. The budget shall also set forth each Unit Owner's

R2001095552

proposed Common Expense assessment. Each Unit Owner shall receive, at least thirty (30) days prior to the adoption thereof by the Board, a copy of the proposed annual budget; the annual budget shall also take into account the estimated net available cash income for the year from the operation or use of the Common Elements, if any. The "estimated annual budget" shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common Elements as set forth in Exhibit C attached hereto. Each Unit Owner shall receive notice in the same manner as is provided in this Declaration for membership meetings of any meeting of the Board concerning the adoption of the proposed annual budget or any increase, or establishment of an assessment.

On or before January 1 of the ensuing year, and the first of each and every month of said year, said Unit Owner jointly and severally shall be personally liable for and obligated to pay to the Board or as it may direct one-twelfth (1/12) of the assessment against his Unit ownership made pursuant to this Section. On or before March 1 of each calendar year following the year in which the initial meeting is held, the Board shall supply to all Unit Owners an itemized accounting of the common expenses for the preceding year actually incurred and paid, together with a tabulation of the amounts collected pursuant to the budget or assessments, and showing the net excess or deficit of income over expenditures plus reserves. Any amount accumulated in excess of the amount required for actual expenses and reserves shall be applied to and transferred to the reserve, or in the alternative credited according to each Unit Owner's percentage of ownership in the Common Elements to the next monthly installations due from Unit Owners under the current year estimate, until exhausted, and any net shortage shall be added according to each Unit Owner's percentage of ownership in the Common Elements to the installations due in the succeeding six (6) months after rendering of the accounting.

b) If an adopted budget requires assessment against the Unit Owners in any fiscal or calendar year exceeding one hundred fifteen percent (115%) of the assessments for the preceding year, the Board, upon written petition by Unit Owners with twenty percent (20%) of the votes of the Association filed within fourteen (14) days of the Board action, shall call a meeting of the Unit Owners within thirty (30) days of the date of filing of the petition to consider the budget. Unless a majority of the votes of the Unit Owners are cast at the meeting to reject the budget, it is ratified, whether or not a quorum is present. In determining whether assessments exceed one hundred fifteen percent (115%) of similar assessments in prior years, any authorized provisions for reasonable reserves for repair or replacement of the condominium property, and anticipated expenses by the Association which are not anticipated to be incurred on a regular or annual basis, shall be excluded from the computation.

2. <u>Reserves and Adjustments</u>. The Board shall establish and maintain a reasonable reserve for contingencies and replacements. Any extraordinary or nonrecurring common expenses, any common expense not set forth in the budget as adopted, and any increase in assessments over the amount adopted shall be separately assessed against all Unit Owners. Any such separate assessment shall be subject to approval by the affirmative vote of at least two-thirds (2/3) of the Unit Owners voting at a meeting of such Unit Owners duly called for the purpose of approving the assessment if it involves proposed expenditures resulting in a total payment assessed to a Unit Owner equal to the greater of five (5) times the Unit's most recent common expenses assessment calculated on a monthly basis or five hundred dollars ($500.00). All Unit Owners shall be personally liable for and obligated to pay their respective adjusted monthly amount.

31

34

# R2001095552

3. **Initial Estimate of Annual Budget.** When the first Board elected or appointed hereunder takes office, it shall determine the "estimated annual budget" as hereinabove defined, for the period commencing thirty (30) days after said election and ending on December 31st of the calendar year in which said election occurs. Assessments shall be levied against the Unit Owners during said period as provided in Section 1 of this Article. Notwithstanding the foregoing, all Units shall be allocated full assessments no later than sixty (60) days after the first Unit is conveyed.

4. **Failure to Prepare Estimates.** The failure or delay of the Board to prepare or serve the annual or adjusted estimate on the Unit Owner shall not constitute a waiver or release in any manner of such Unit Owner's obligation to pay the maintenance costs and necessary reserves, as herein provided, whenever the same shall be determined, and in the absence of any annual estimate or adjusted estimate, the Unit Owner shall continue to pay the monthly maintenance charge at the then existing monthly rate established for the previous period until the next monthly maintenance payment which is due not less then ten (10) days after such new annual or adjusted estimate shall have been mailed or delivered.

5. **Books and Records.** The Board shall keep full and correct books of account in chronological order of the receipts and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred. Such records and the vouchers authorizing the payments shall be available for inspection by any Unit Owner or any representative of a Unit Owner duly authorized in writing, at such reasonable time or times during normal business hours as may be requested by the Unit Owner. Upon ten (10) days' notice to the Board and payment of a reasonable fee, any Unit Owner shall be furnished a statement of this account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner.

6. **Use of Funds.** All funds collected hereunder shall be held and expended for the purpose designated herein, and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such adjustments as may be required to reflect delinquent or prepaid Assessments) shall be deemed to be held for the benefit, use, and account of all the Unit Owners in the percentages set forth in Exhibit C. The Developer shall not use the funds collected hereunder in connection with its expenses or construction costs or to make up any budget deficits while it is in the control of the Association.

7. **Insurance.** Any insurance premiums assessed on a basis reflecting increased charges for coverage on certain Units shall be assessed to such Unit.

8. **Failure to Pay Assessments.** If a Unit Owner is in default in the monthly payment of the aforesaid charges of assessments for thirty (30) days, the Board may bring suit for and on behalf of the members thereof and as representatives of all Unit Owners, to enforce collection thereof or to foreclose the lien therefor as hereinafter provided; and there shall be added to the amount due the costs of said suit, and other fees and expenses together with legal interest and reasonable attorneys' fees to be fixed by the court. To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments, and interest, costs, and fees as above provided, shall be and become a lien of charge against the Unit Ownership of the Unit Owner involved when payable and may be foreclosed by an action brought in the name of the Board as in the case of foreclosure of liens against real estate. Such lien shall take effect and be in force when and as provided in the Act; provided, however, that encumbrances owned or held by any bank, insurance company, savings and loan association, or other lender shall be subject as to priority after written notice to said encumbrancer of unpaid common



35

## R2001095552

expenses only to the lien of all common expenses on the encumbered Unit Ownership which became due and payable subsequent to the date the encumbrancer either takes possession of the Unit, accepts a conveyance of any interest in the Unit Ownership or has a receiver appointed in a suit to foreclose its liens. In addition to the foregoing, the Board or its agents shall have such other rights and remedies to enforce such collection as shall be provided or permitted by law from time to time. Without limiting the generality of the foregoing, if any Unit Owner shall fail to pay the proportionate share of the common expense or of any other expense required to be paid hereunder when due, such rights and remedies shall include: (1) the right to enforce the collection of such defaulting Unit Owner's share of such expenses (whether due by acceleration or otherwise), together with interest thereon, at the maximum rate permitted by law, and all fees and costs (including reasonable attorneys' fees) incurred in the collection thereof; (2) the right, by giving such defaulting Unit Owner five (5) days' written notice of the election of the Board so to do, to accelerate the maturity of the unpaid installments of such expenses occurring with respect to the balance of the assessment year; and (3) the right to take possession of such defaulting Unit Owner's interest in the property, to maintain for the benefit of such Unit Owner in the manner prescribed in "An Act in regard to Forcible Entry and Detainer," approved February 16, 1874, as amended, and to execute leases of such defaulting Unit Owner's interest in the property and apply the rents derived therefrom against such expenses.

9. <u>Nonuse</u>. No Unit Owner may waive or otherwise escape liability for the assessments provided for herein by nonuse of the Common Elements or abandonment of his Unit.

10. <u>Forbearance</u>. The Association shall have no authority to forbear the payment of assessments by any Unit Owner.

11. <u>Initial Deposit for Contingencies or Replacements</u>. At the time the initial sale of each Unit is closed, the purchaser of the Unit shall pay to the Association in amount equal to two (2) times the first full monthly assessment for such Unit. This sum shall be used to initially fund the reserve for contingencies and replacements of the Association. This payment shall not be refundable or be applied as a credit against the Unit Owner's monthly assessments.

### ARTICLE XVI
### COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY

The Units and Common Elements shall be owned, occupied, and used subject to the following covenants and restrictions:

1. <u>General Use</u>. No part of the Units, Common Elements or Limited Common Elements shall be used for other than housing and related common purposes for which the Property was designed. Each Unit shall be used as the owner's primary or secondary residence for a single family or such other incidental uses permitted by this Declaration and for no other purpose. That part of the Common Elements separating any two or more adjoining Units used together as aforesaid may be altered to afford ingress and egress to and from such adjoining Units in such manner and upon such conditions as shall be determined by the Board in writing.

2. <u>Obstruction of Common Elements and Unit Maintenance</u>. There shall be no obstruction of the Common Elements nor shall anything be stored in the Common Elements without prior consent of

33

36

R2001095552

11. **Personal Effects.** There shall be no playing, lounging, parking of baby carriages, strollers or playpens, bicycles, wagons, toys, vehicles, benches, or chairs on any part of the Common Elements, except that baby carriages, bicycles, and other personal property may be stored in the common storage area designated for that purpose, if any. No access to or storage of personal property shall be permitted in the boiler or mechanical rooms in accordance with the rules and regulations of the Board.

12. **Commercial Activities.** No industry, business trade, occupation, or profession of any kind, commercial, religious, educational, or otherwise, designated for profit, altruism, exploration, or otherwise, shall be conducted, maintained, or permitted in any Unit.

13. **"For Sale" and "For Rent" Sign.** No "For Sale" or "For Rent" signs, advertising, or other displays shall be maintained or permitted on any part of the Property, except as such location and in such form as shall be determined by the Board; provided that the right is reserved by Developer and its agents to maintain on the Property until the initial sale of the last Unit, all models, sales offices, and advertising signs, banners, and lighting in connection therewith, at such locations and in such forms as Developer shall determine, together with the right of ingress, egress and transient parking therefor in and upon the Common Elements.

10. **Exceptions.** The Unit restrictions in Sections 1 and 12 of this Article XVI shall not, however, be construed in such a manner as to prohibit a Unit Owner from: (a) maintaining his personal professional library therein; (b) keeping his personal business or professional records or accounts therein; (c) handling his personal business or professional telephone calls or correspondence therefrom; (d) maintaining a computer or other office equipment within the Unit; or (e) utilizing secretarial help and having occasional business visitors. Such uses are expressly declared customarily incident to the principal residential use and not in violation of Sections 1 and 12 of this Article XVI. It is the intent of this Section 15 of this Article XVI that Unit Owners may operate in-home businesses from their respective Units provided such businesses are lawful, do not involve the regular or consistent entry of salespeople, customers or clients, and do not cause a nuisance to other Unit Owners, and provided further that the Unit is used at all times primarily as the residence of the person operating the in-home business in such Unit. Notwithstanding the foregoing, no Unit Owner shall suffer or permit the regular or consistent entry of customers, clients or other business-related invitees.

### ARTICLE XVII
### REMEDIES FOR BREACH OF COVENANTS, RESTRICTIONS AND REGULATIONS

1. **Abatement and Enjoyment.** The violation of any restriction, or condition or regulation adopted by the Board, or the breach of any covenant or provision herein contained, shall give the Board the right, in addition to the rights set forth in the next succeeding section: (a) to enter upon that part of the Property where such violation or breach exists and summarily abate and remove, at the expense of the defaulting Unit Owner, any structure, thing or condition that may exist thereon contrary to the intent and the provisions hereof, and Developer, its successors or assigns, the Board and the respective agents of the foregoing parties shall not thereby be deemed guilty in any manner of trespass; or (b) to enjoin, abate, or remedy by appropriate legal proceeding, either at law or in equity, the continuance of any breach. Any aggrieved Unit Owner shall have those rights as granted to the Association pursuant to the foregoing subsection (b). All expenses of the Board in connection with such actions or proceedings, including court

# R2001095552

costs and attorneys' fees and expenses, and all damages, liquidated or otherwise, together with interest thereon the rate of eighteen percent (18%) per annum until paid, shall be charged to and assessed against such defaulting Unit Owner, and shall be added to and deemed part of his respective share of the Common Expenses, and the Board shall have a lien for all of the same upon the Unit ownership of such defaulting Unit Owner and upon all of his additions and improvements thereto and upon all his personal property in his Unit or located elsewhere on the Property. Any and all of such rights and remedies may be exercised at any time and from time to time, cumulatively or otherwise, by the Board.

2. **Voluntary Sale.** If any Unit Owner (either by his own conduct or by the conduct of any Occupant) violates any of the covenants or restrictions or provisions of this Declaration or the rules and regulations adopted by the Board, and such violation shall continue for thirty (30) days after notice in writing from the Board, or shall re-occur more than once after such notice, then the Board shall have the power to issue Unit Owner a ten (10) day notice in writing to terminate the rights of said defaulting Unit Owner, or to continue as a Unit Owner and to continue to occupy, use, or control his Unit and thereupon an action in equity may be filed by the members of the Board against the defaulting Unit Owner for a decree of mandatory injunction against Unit Owner or Occupant or, in the alternative, for a degree declaring the termination of the defaulting Unit Owner's right to occupy, use, or control the Unit Owned by him on account of the said violation and ordering that the right, title and interest of the Unit Owner in the Property shall be sold (subject to the lien of any existing mortgage) at a judicial sale upon such notice and terms as the court shall establish, except that the court shall enjoin and restrain the defaulting Unit Owner from re-acquiring this interest in the Property at such judicial sale. The proceeds of any such costs, court report charges, reasonable attorneys' fees, and all other expenses of the proceeding and sale, and all such items shall be taxed against the defaulting Unit Owner in said decree. Any balance of proceeds, after satisfaction of such charges and any unpaid assessments hereunder or any liens, shall be paid to the Unit Owner. Upon the confirmation of such sale, the purchaser thereof shall thereupon the entitled to a deed of the Unit Ownership and to immediate possession, and it shall be a condition of any such sale, and the decree shall so provide, that the purchaser take the interest in the Property sold subject to this Declaration.

## ARTICLE XVIII
## ANNEXING ADDITIONAL PROPERTY

1. The Developer reserves the right from time to time, within not more than seven (7) years of the date of the recording of this Declaration, to annex and add to the Parcel and Property and thereby add to the condominium created by this Declaration, all or any portion of the additional land set forth in Exhibit D by recording an amended plat in accordance with Section 5 of the Act and an amended declaration in accordance with Section 6 of the Act. Developer is not obligated to annex and add any land to the Parcel and Property, but intends to do so at different times until the earlier of (i) the construction of 202 Units in the aggregate (which is the maximum number of units to be constructed on the Property) or (ii) seven (7) years from the date of recording of this Declaration. There are no limitations on the order in which the additional land shall be added and annexed. ~~The boundaries of the portions of the land to be added, and the location of the improvements and the number of units to be built thereon, shall be in conformity with the Plat attached hereto as Exhibit B.~~ The structures, improvements, Buildings, and Units will be compatible with the configuration of the Property, Buildings and Units in relation to density, use, construction, and architectural style. No rights of any character whatever within the additional land attach to any owner except as to that portion described in any recorded Amended Declaration annexing and adding such portion to this Declaration as part of the condominium created by this Declaration

36

39